# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| Global Crossing Local Services, Inc., | ) |
| Plaintiff, | ) |
| v. | ) |
| The Missouri Public Service Commission, | ) |
| and | ) Case No.: _____ |
| Kevin Gunn, Chairman, Robert M. Clayton, III, Commissioner, Jeff Davis, Commissioner, Terry M. Jarrett, Commissioner, and Robert S. Kenney, Commissioner, in their official capacities and not as individuals, | ) |
| and | ) |
| Southwestern Bell Telephone Company d/b/a AT&T Missouri, | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Global Crossing Local Services, Inc. ("Global Crossing"),[1] by and through counsel, states the following as its Complaint against Defendants, the Missouri Public Service Commission (the "PSC") and its Commissioners (Kevin Gunn, Chairman, Robert M. Clayton, III, Commissioner, Jeff Davis, Commissioner, Terry M. Jarrett, Commissioner, and Robert S. Kenney, Commissioner, in their official capacities and not as individuals (collectively the

---

[1] On December 31, 2010, Global Crossing Telemanagement, Inc. was merged into and became a part of Global Crossing Local Services, Inc., the surviving entity. Any interest that Global Crossing Telemanagement, Inc. had in the subject arbitration and in making this appeal is now held by Global Crossing Local Services, Inc.

826473.1

"Commissioners")) (collectively, the PSC and the Commissioners will be referred to herein as the "Commission") and Southwestern Bell Telephone Company d/b/a AT&T Missouri ("AT&T Missouri").  Global Crossing seeks declaratory and injunctive relief with respect to a December 15, 2010, decision of the Commission (the "Arbitration Decision") in an arbitration between Global Crossing and AT&T Missouri, the Commission's January 19, 2011 Order Denying Rehearing and Reconsideration (the "Reconsideration Denial Order") of the Arbitration Decision, and the Commission's January 19, 2011 Order Approving Confirmed Agreement ("ICA Approval Order") (attached hereto as **Exhibits A, B, and C**, respectively) which violate the Telecommunications Act of 1996 ("1996 Act"), Pub. L. No. 104-104, 1 10 Stat. 56 as incorporated into the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.* ("Communications Act" or "the Act").

## INTRODUCTION

1.    This action is brought under 47 U.S.C. § 252(e)(6), which allows aggrieved parties to seek relief "in an appropriate Federal district court" with regard to determinations made in the arbitration of an interconnection agreement ("ICA") by a state public utility commission under 47 U.S.C. § 252.  47 U.S.C. §§ 251, 252.

2.    This dispute arises from a decision of the Commission in the subject arbitration related to intercarrier compensation for voice over Internet protocol ("VoIP") traffic exchanged between Global Crossing and AT&T Missouri.  In the Arbitration Decision, as upheld by the Reconsideration Denial Order, the Commission ruled that VoIP traffic "that is not within one local exchange is subject to access charges."  The Commission also made determinations on other issues in the Arbitration Decision of which Global Crossing is not seeking judicial review.

3.    The Commission decided in the Arbitration Decision that existing Missouri law, specifically Section 392.550.2, RSMo Supp. 2009, requires that VoIP traffic "that is not within

one local exchange is subject to access charges as is any other switched traffic, regardless of format."  The Commission did not subject what it considered to be interstate VoIP traffic to access charges.  Access charges are a form of compensation that interexchange carriers are typically required to pay local exchange carriers when local exchange carriers originate or terminate circuit-switched telecommunications services traffic on behalf of the interexchange carriers.  Traffic is subject to access charges if it originates and terminates in two different exchanges (or local calling areas) and does not undergo what is known in the telecommunications industry as a "net protocol conversion."  *See Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Tel. Servs. Are Exempt from Access Charges,* 19 F.C.C.R. 7457 (2004) ("AT&T Declaratory Ruling").

4.	The Commission, in the Arbitration Decision, directed Global Crossing and AT&T Missouri (collectively, the "Parties") to file an ICA that contained the language required by the Commission subjecting intrastate VoIP traffic to access charges.  In the ICA Approval Order, the Commission approved the conforming ICA that AT&T filed on December 28, 2010, in response to the Arbitration Decision.  The Arbitration Decision's determination regarding the treatment of VoIP traffic is critical because it improperly establishes a significant cost burden for Global Crossing and is contrary to Federal Communications Commission ("FCC") precedent and regulations, Section 251(b)(5) and (g) of the Communications Act, and federal court decisions.  On January 19, 2011, the Commission disallowed Global Crossing's request for rehearing or reconsideration of the Arbitration Decision in the Reconsideration Denial Order and issued the ICA Approval Order approving the ICA the Parties had filed on December 28, 2010.

5.	As described hereinbelow, Global Crossing seeks review of the Commission's determination that certain VoIP traffic is subject to intrastate access charges.  Global Crossing

asks this Court to reverse the determination of the Commission on this point and declare that this aspect of the Arbitration Decision and the corresponding language that the Commission ordered the Parties to include in their ICA are unlawful under applicable federal law.  Global Crossing also asks the Court to find that, under current federal law, VoIP traffic is not subject to access charges and that the Parties' ICA should be made to conform to current federal law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the judicial review provisions in the Act, 47 U.S.C. § 252(e)(6), and pursuant to 28 U.S.C. § 1331.

7. Venue in the Eastern District of Missouri is proper pursuant to 28 U.S.C. § 1391(b).  AT&T Missouri does business in this district, has a registered agent in this district and substantial portions of its local telecommunications network are located in this district.  Additionally, the Commission regulates telecommunications market and utilities throughout the State of Missouri, including in this district.  Accordingly, this is an "appropriate Federal district court" within the meaning of 47 U.S.C. § 252(e)(6).

## PARTIES

8. Plaintiff Global Crossing Local Services, Inc. is a Michigan corporation with its principal place of business at 225 Kenneth Drive, Rochester, NY 14623.  It is certified by the Commission to provide local exchange service and other services in Missouri and is both a telecommunications carrier and local exchange carrier under 47 U.S.C. §§ 153(26) and (44).  Plaintiff is also a provider of VoIP, a non-telecommunications service, within Missouri.

9. The Missouri Public Service Commission regulates telecommunications companies and other utilities in the entire State of Missouri, including the telecommunications services that they offer.  The Commission's offices are based in Jefferson City, Missouri.

10. Defendant Kevin Gunn is Chairman of the Commission and performs his official duties in Jefferson City, Missouri. At the time of the Arbitration Decision, Mr. Gunn was a Commissioner and not the Chairman. Chairman Gunn is sued in his official capacity for declaratory and injunctive relief only.

11. Defendants Robert M. Clayton, III, Jeff Davis, Terry M. Jarrett, and Robert S. Kenney, are Commissioners of the Commission and perform their official duties in Jefferson City, Missouri. At the time of the Arbitration Decision, Mr. Clayton was the Chairman and not a Commissioner. The Commissioners are sued in their official capacity for declaratory and injunctive relief only.

12. Defendant AT&T Missouri is a Missouri corporation doing business in Missouri with its principal place of business in Missouri located at One AT&T Center, Room 3520, St. Louis, Missouri 63101. AT&T Missouri is an incumbent local exchange carrier ("ILEC") under 47 U.S.C. § 251(h) in its authorized service territories in Missouri.

## BACKGROUND

### A.   The Telecommunications Act of 1996

13. Congress passed the Telecommunications Act of 1996 to promote competition in all telecommunications markets.

14. Congress gave competing carriers various rights vis-à-vis ILECs, like AT&T Missouri, which are listed in Sections 251(b) and (c) of the Act. These include the right to connect the competitor's network to the incumbent carrier's network (called "interconnection") at a point on the incumbent's network for the provision of "telephone exchange service" or "exchange access." 47 U.S.C. § 251(c)(2). Congress also imposed on ILECs and other local exchange carriers the obligation to "establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). In addition, Congress

provided that certain restrictions and obligations that pre-dated the 1996 Act, including exchange access services, would continue in effect until superseded by new regulations of the FCC.  47 U.S.C. § 251(g)(5).  At the time the 1996 Act was passed, there were no interconnection arrangements involving VoIP traffic and carriers did not pay access charges to local exchange carriers for the origination or completion of VoIP traffic.

15. The FCC has declined on numerous occasions to find that VoIP is a telecommunications service under the Communications Act.

16. Section 252 of the Communications Act sets forth the requirements for implementation of Section 251(b) and (c) relating, among other things, to interconnection.  *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 419 (1999) (Breyer, J., concurring in part and dissenting in part).  The Section 252 framework is based exclusively on two-party interconnection agreements.  Specifically, under Section 252(a)(1), a competing carrier can ask an incumbent carrier to negotiate an interconnection agreement to implement Sections 251(b) and (c).  If good-faith negotiations do not yield a complete contract, either party can ask the state pubic utility commission to arbitrate "open issues."  47 U.S.C. § 252(b).

17. Section 252(b) requires the Commission to "limit its consideration" to the "open issues" raised for arbitration by the Parties themselves in the Petition and Response, and directs the Commission to "resolve each [open] issue" only "as required to implement subsection (c)," *i.e.*, Section 251(c).  47 U.S.C. § 252(b)(4)(A) & (C).

18. After negotiation and, to the extent initiated by one or both of the negotiating parties, arbitration are complete, the parties must submit their Section 252 interconnection agreement to the state commission for approval under the standards in Section 252(e).  Once the

6

state commission approves, or denies approval, of an interconnection agreement, either party may seek judicial review of the commission action.

      **B.**     **Arbitration Proceeding at the Commission**

19. On August 27, 2010, AT&T Missouri filed a petition for arbitration of certain rates, terms, and conditions for interconnection with Global Crossing pursuant to Section 252(b) of the Act (the "Petition").

20. On September 21, 2010, Global Crossing filed its response to the Petition.

21. The arbitrator convened the initial arbitration meeting on September 9, 2010, and issued the procedural schedule on September 16, 2010.

22. The Parties submitted final offers to the Commission on September 27, 2010, jointly filed a revised statement of unresolved issues on September 28, 2010, and submitted subsequent final offers and jointly filed a final statement of unresolved issues on October 4, 2010.

23. The arbitrator convened a pre-hearing conference on October 5, 2010.

24. The Parties waived hearing and other procedural formalities as follows.  On October 4, 2010, the Parties filed a Joint Motion to Waive Cross-Examination and Cancel Hearing, stipulating to a decision on pre-filed testimony.  On October 5, 2010, the arbitrator issued an Order Canceling Hearing, Allowing Late Filing and Allowing Entry into Record.  In that Order, the arbitrator allowed AT&T Missouri to file a discovery response from Global Crossing and enter it into the record as the Parties stipulated at the pre-hearing conference.  On October 8, 2010, AT&T Missouri made that filing and entered Global Crossing responses to data requests into the record.

25. The Parties filed initial briefs as to the issue of treatment of VoIP traffic on September 29, 2010. The Parties filed initial briefs as to the other arbitration issues, of which Global Crossing does not seek review here, on October 13, 2010. The Parties filed reply briefs on all issues in the arbitration on October 18, 2010.

26. On November 8, 2010, the arbitrator filed the draft arbitration report. The draft arbitration report proposed to resolve the issue of the proper intercarrier compensation for the exchange of VoIP traffic by finding that intrastate VoIP traffic is subject to the same switched access charges as intrastate interexchange switched access traffic.

27. The Commission received comments as to the draft arbitration report from the Parties on November 18, 2010.

28. On December 15, 2010, the Commission issued its Arbitration Decision, adopting the draft arbitration report as to the issue of treatment of VoIP traffic and resolving the remaining issues.

29. On December 27, 2010, Global Crossing filed an Application for Rehearing or, in the Alternative, Motion for Reconsideration seeking rehearing on, or reconsideration of, the Arbitration Decision ("Application for Rehearing").

30. On December 28, 2010, the Parties filed with the Commission an ICA conforming to the Arbitration Decision.

31. On that same day, AT&T Missouri filed a Statement of Compliance. Simultaneously, Global Crossing filed comments on the conforming ICA. Global Crossing explained in its comments why the ICA's provisions requiring the payment of intrastate access charges for certain VoIP traffic violates the Communications Act and other applicable federal law and why federal law preempts the Missouri statute on which the Commission relied.

32. On January 19, 2011, the Commission issued the Reconsideration Denial Order denying the Application for Rehearing, effectively affirming the Arbitration Decision.

33. On January 19, 2011, the Commission also issued the ICA Approval order approving the conforming ICA filed by the Parties to reflect the decision of the Commission in its Arbitration Decision.

34. Global Crossing now appeals the Commission's rulings regarding the treatment of VoIP traffic pursuant to 47 U.S.C. § 252(e)(6).

## COUNT ONE

**(The determination that certain VoIP traffic is subject to intrastate access charges is in violation of federal law)**

35. Global Crossing incorporates herein all allegations in the preceding paragraphs numbered [1 through 34], inclusive.

36. Voice traffic that originates in Internet protocol ("IP") format outside of the public switched telephone network ("PSTN") and terminates on the PSTN in a circuit-switched format undergoes a net protocol conversion. IP format is a non-circuit switched format. Similarly, voice traffic that originates on the PSTN in a circuit-switched format and terminates off the PSTN in IP format undergoes a net protocol conversion. *See, e.g.,* 47 C.F.R. § 64.702(a) (defining enhanced services to include "services . . . which employ computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information . . ."); *AT&T Declaratory Ruling*, 19 F.C.C.R. at 7465 (AT&T's phone-to-phone service subject to access charges because it did not undergo a net protocol conversion).

37. The Parties' arbitration focused on the proper treatment, for intercarrier compensation purposes, of a type of traffic described in the previous paragraph, also known as VoIP traffic.

38. Traffic that undergoes a net protocol conversion, for example from a circuit-switched format to a non-circuit switched format, under existing and applicable law, is enhanced services traffic under the Communications Act and applicable FCC rules and orders. The VoIP traffic at issue in the arbitration undergoes a net protocol conversion from IP format to circuit-switched format or *vice versa* and is, thus, enhanced services traffic rather than telecommunications services traffic.

39. Jurisdictionally, the VoIP traffic at issue in the Parties' arbitration, regardless of where it originates and terminates, is subject to the FCC's jurisdiction, not the jurisdiction of the Missouri Commission

40. Enhanced services traffic is not subject to interstate or intrastate access charges as the result of an exemption adopted by the FCC in orders from 1980 and 1983 when the access charge regime was established. *See MTS and WATS Market Structure*, 97 F.C.C.2d 682, 715 (1983); *Amendment of Section 64.702 of the Commission's Rules and Regulations (Second Computer Inquiry)*, 77 F.C.C.2d 384 (1980). In 2001, when commencing a proceeding designed to develop a forward-looking regulatory treatment of intercarrier compensation, including compensation for the exchange of VoIP and other IP-based traffic, the FCC confirmed that "IP telephony [is] generally exempt from access charges under the enhanced services provider exemption." *Developing a Unified Intercarrier Compensation Regime,* 16 F.C.C.R. 9610, 9613 (2001).

41. The 1996 Act adopted a definition of "information services" that described services that are essentially indistinguishable from "enhanced services," which the FCC has confirmed on several occasions. *See, e.g., Non-Accounting Safeguards Order*, 11 F.C.C.R. 21905, 21955-58 (1996) (the statutory term "information service" is similar to the definition of

an *enhanced* service); *see also Federal-State Joint Board on Universal Service,* Report to Congress*,* 13 F.C.C.R. 11501, 11507-08, 11516-17 (1998).  Thus, services such as the VoIP traffic at issue in the Parties' arbitration that undergo a net protocol conversion also qualify as "information services" under the 1996 Act.

42. VoIP traffic was not exchanged between providers at the time the 1996 Act was passed into law.  Section 251(g) of the Communications Act, added by the 1996 Act, provides that access charges apply only to that telecommunications traffic which was subject to access charges at the time the 1996 Act was passed.  Otherwise, telecommunications traffic is subject to no more than reciprocal compensation arrangements under Section 251(b)(5).  47 U.S.C. § 251(b)(5).  VoIP traffic is not subject to access charges because VoIP is an enhanced service.  But, even if VoIP traffic were to be subject to some form of compensation when exchanged between Global Crossing and AT&T Missouri, it would, at most, be subject to reciprocal compensation under Section 251(b)(5) of the Communications Act because VoIP traffic does not pre-date the 1996 Act and is not part of the access charge carve-out in Section 251(g).

43. Global Crossing took the position in the arbitration before the Missouri Commission that VoIP traffic that undergoes a net protocol conversion and is exchanged between the Parties is not subject to access charges.

44. AT&T Missouri took the position in the arbitration that access charges should apply to VoIP traffic.

45. The Commission ruled in the Arbitration Decision that VoIP traffic that begins and ends within the State of Missouri "that is not within one local exchange is subject to access charges."  The Commission relied, in part, on a Missouri statute which it interpreted to provide that intrastate access charges apply to VoIP traffic that begins and ends within the borders of the

State of Missouri. *See* Section 392.550.2, RSMo Supp. 2009.  The Commission made no finding with respect to VoIP charges that do not begin and end within the borders of Missouri, *i.e.,* "interstate" VoIP, concluding that compensation for such traffic was outside its jurisdiction.

46. The Commission's finding that VoIP traffic that begins and ends within the State of Missouri is contrary to applicable federal law and should be reversed.  *See e.g. PAETEC Communications, Inc. v. CommPartners, LLC,* No. 08-0397 (D.D.C. Feb. 18, 2010); *Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055, 1081-83 (E.D. Mo. 2006), *aff'd*, 530 F.3d 676 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 971 (2009).

47. The Missouri statute the Commission relied on in imposing access charges on VoIP traffic is preempted by federal law.  *See Vonage Holdings Corp. v. Minnesota Pub. Utils. Comm'n*, 290 F. Supp. 2d 993, 999-1001 (D. Minn. 2003), *aff'd*, 394 F.3d 568 (8th Cir. 2004); *Vonage Holdings Corp.*, 19 F.C.C.R. 22404 (2004).

48. If the Court finds for Global Crossing on this issue, then the provisions of the Parties' ICA that subject VoIP traffic to access charges should be declared invalid and unenforceable.  The Court should permit the remainder of the ICA to remain in effect.

## RELIEF REQUESTED

WHEREFORE, Global Crossing requests that this Court:

a. Declare that the Commission's determination that certain VoIP traffic is subject to intrastate access charges is contrary to federal law and/or arbitrary and capricious.

b. Declare that the Missouri statute upon which the Commission relied to make its finding that certain VoIP traffic is subject to intrastate access charges is preempted by federal law to the extent such statute so provides.

c. Enjoin AT&T Missouri and any person acting on its behalf from enforcing any provision of the Commission's Arbitration Decision and the ICA between the

   Parties that provides that VoIP traffic is subject to access charges, as those provisions are contrary to and are preempted by federal law.

d. Grant Global Crossing such further equitable relief as the Court deems appropriate.

Dated:  February 18, 2011.

| OF COUNSEL: | Respectfully submitted, |
|---|---|
| Michael J. Shortley, III<br>Ted Price<br>GLOBAL CROSSING LOCAL SERVICES, INC.<br>225 Kenneth Drive<br>Rochester, NY 14623<br>(585) 255-1429 (Telephone)<br>(877) 769-9844 (Facsimile)<br>michael.shortley@globalcrossing.com<br>ted.price@globalcrossing.com | SPENCER FANE BRITT & BROWNE LLP<br><br>By:   /s/ Erik O. Solverud<br> Erik O. Solverud, #44291MO<br> Jennifer C. Znosko, #56842MO<br> 1 N. Brentwood Blvd., Suite 1000<br> St. Louis, MO 63105<br> (314) 863-7733 (Telephone)<br> (314) 862-4656 (Facsimile)<br> esolverud@spencerfane.com<br> jznosko@spencerfane.com<br><br> Edward A. Yorkgitis, Jr.<br>  D.C. Bar No. 418904<br> Barbara A. Miller<br>  D.C. Bar No. 464734<br> KELLEY DRYE & WARREN, LLP<br> 3050 K Street N.W., Suite 400<br> Washington, D.C.  20007<br> (202) 342-8400 (telephone)<br> (202) 342-8451 (facsimile)<br> cyorkgitis@kelleydrye.com<br> bmiller@kelleydrye.com<br><br> *Attorneys for Plaintiff Global Crossing Local Services, Inc.* |

826473.1